## GEORGE EDSON *vs.* LORENZO E. MUNSELL.

A judgment for partition is conclusive evidence upon the parties and their privies that the land set off to the petitioner, together with a spring of water situated thereon, was formerly held by the parties in common.

TORT to recover damages for the obstruction of water in an aqueduct laid in 1813 from a spring on land of the defendant to a tub on land of the plaintiff.

At the second trial in the superior court, before *Morton,* J., after the decision reported in 10 Allen, 557, the plaintiff offered evidence tending to show that, from the year 1813 to within two or three years prior to the commencement of the suit, he and his grantors had open, adverse, uninterrupted and exclusive possession of the easement claimed. The plaintiff's land was owned by Isaac Chapin from 1812 till his death in 1855, when it descended to his heirs, and afterwards came to the plaintiff.

The title of the defendant to the land on which the spring was situated was as follows: Martha Partridge, wife of Duty Partridge, senior, died in 1795, leaving a farm, of which the premises were part, to her six children as heirs at law, subject to her husband's tenancy by the curtesy, which continued until his death in 1818. After this event, the land on which the spring was situated came into the exclusive possession of Duty Partridge, who was one of the said children, as his share of the estate, assigned to him under an agreement among the heirs, though no conveyance or legal partition thereof was made. At different times during the years 1823 and 1824, and while the premises were so occupied by Duty Partridge, several of the heirs of Martha Partridge executed deeds to Isaac Chapin of all their interest in the farm on which their late father last lived, described as bounded "north on Duty Partridge," meaning thereby the premises occupied by him as aforesaid. In 1835, Eliphalet Hancock, who was in that year appointed guardian of Duty Partridge, as a person *non compos mentis*, petitioned the court of common pleas for partition of land lying in common and undivided between said Duty and Isaac Chapin and other

persons unknown, describing the farm above named, including the land on which the spring is situated, and notice thereof was served on said Isaac, who appeared at court by his attorney, and, after due proceedings had, partition was made in February 1836, whereby the lot now owned by the defendant, including the spring, was set off to Duty Partridge. Hancock was discharged from his guardianship in 1847, upon his own petition, and another guardian was appointed, who continued in office till after the conveyance to the defendant, in 1855.

The defendant asked the court to rule that Chapin was a tenant in common, with Duty Partridge, of the land on which the spring is situated, from the time of his purchases from the heirs of Martha Partridge until the partition ; and that he acquired no right by occupation during that period ; but the judge declined so to rule.

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*M. P. Knowlton*, for the defendant.

*H. Morris*, for the plaintiff. The deeds from the heirs of Mrs. Partridge conveyed no part of the premises in question to Chapin. The boundary of the premises conveyed, " north on Duty Partridge," excludes such a construction ; and that description would apply to land occupied by him, if he owned no land there. The judgment of partition does not show that Chapin had any title to this lot. He was a tenant in common of the other portions of the farm. That judgment does not estop the plaintiff from denying Chapin's title in this lot, because it affects only the right of possession, and not the title. *Nash* v. *Cutler*, 16 Pick. 500. *Pierce* v. *Oliver*, 13 Mass. 213. If Chapin was a tenant in common, he might nevertheless acquire the easement, there being no complete union of titles and possession. *Binney* v. *Proprietors in Hull*, 5 Pick. 503.

CHAPMAN, J. It appears that in February 1836 partition was made of the whole of the farm which had formerly belonged to Mrs. Martha Partridge, including the lot on which the spring is situated. The judgment of partition was rendered in the court of common pleas, upon the petition of her son Duty Partridge,

by his guardian. Isaac Chapin was a party respondent. Under this partition the parties entered into the several tracts set off to them respectively, and they and their grantees have held them ever since. The judgment of partition, remaining in force and unreversed, is conclusive upon the parties and their privies as to the title up to the time of its rendition. They are estopped to say that they were not tenants in common of the whole of the land. It is conclusive in respect to the spring as well as in respect to the land. It concludes the plaintiff, who claims under Chapin, and the defendant, who claims under Duty Partridge.

The report also shows that in fact no adverse title to the spring could have been gained as against Duty Partridge up to the time of the partition. His mother died in 1797. His father then entered upon the land as tenant by the curtesy, and held it till his death in 1818. Up to that time adverse occupation would have been immaterial as to him. A disseisin of a tenant for life does not affect the title of the remainder-man. *Miller* v. *Ewing*, 6 Cush. 34. Between that time and the partition only eighteen years elapsed, which was insufficient to gain an adverse title.

Since the partition he has been under guardianship as a person *non compos mentis* for so great a part of the time as to prevent the acquisition of any title against him by adverse occupation. The judge ought to have ruled, as requested, that Isaac Chapin acquired no right to the spring by adverse occupation up to the time of the partition. His attention does not appear to have been called to some of the other points here discussed. *Exceptions sustained.*